## STRAUS v. J. M. RUSSELL CO.

(Circuit Court, D. Oregon. March 1, 1898.)

**1. CONTRACTS—WAIVER—PLEADING AND PROOF.**

In an action for breach of contract, a party who has pleaded waiver of a stipulation by subsequent contract cannot be allowed to rely on a waiver by conduct.

**2. SAME—SALE.**

A stipulation by the purchaser to make advances on a given date, before the time fixed for any shipments, is not waived by the seller by making shipments of part of the goods, though the full amount has not been advanced according to the stipulations.

**3. SAME—DEPENDENT AND INDEPENDENT PROMISES.**

A stipulation by the purchaser to make specified advances on a certain date prior to the time of shipment of the goods will not be construed as an independent promise, when both parties understand that such advances are necessary to enable the seller to procure the goods from other parties. In such case the advances are a condition precedent to performance by the seller.

This was an action at law by Theodore L. Straus against the J. M. Russell Company to recover damages for breach of a contract of sale. The case was heard on a motion by plaintiff for new trial.

Wirt Minor, for plaintiff.

Milton W. Smith and Zera Snow, for defendant.

BELLINGER, District Judge. This is a motion for a new trial, by the plaintiff, upon the ground that the evidence was insufficient to justify the verdict, and because of errors occurring at the trial, and excepted to by the plaintiff. The controversy grows out of a hop con-

tract, entered into between the parties on the 9th day of April, 1896, the material part of which contract is as follows:

"That the said party of the first part, in consideration of the covenants hereinafter contained on the party of the second part to be performed, does hereby agree to sell and deliver to the party of the second part five hundred (500) bales of choice Oregon hops, of the growth of the season of 1896, said hops to be well cured, well picked, and well baled, and no bale to weigh less than one hundred and seventy (170) pounds, and not more than two hundred and fifteen (215) pounds, with an allowance for tare of seven pounds for each bale. Two hundred (200) bales to be shipped not later than the 15th of October, 1896, and one hundred and fifty (150) bales in November, 1896, and one hundred and fifty (150) bales in December, 1896; the party of the second part, however, to have the privilege of requiring that said November and December shipments be made in October, or that the December shipment be made in November, upon ten days' notice to that effect to the said party of the first part. The party of the second part, in consideration of the premises, hereby promises and agrees to pay for said hops at the rate of seven and one-half cents per pound net, upon being advised that said hops have been shipped 'f. o. b.' at said city of Portland. Said payments to be made as follows: Two thousand (2,000) dollars to be paid on September 1st, 1896, and the balance to be paid when said hops are so delivered on cars in Oregon; of the said first payment of two thousand (2,000) dollars, twelve hundred (1,200) dollars to be credited to the first two hundred (200) bales so shipped, and the remaining eight hundred (800) dollars to be credited to the second shipment of one hundred and fifty (150) bales; and all payments after the first two thousand (2,000) dollars to be made punctually at the time of the shipments of said hops."

The plaintiff alleges that he complied with this contract on his part, except that he did not make the payment of $2,000 on the 1st day of September, 1896; but that on the 15th day of October, 1896, the plaintiff and the defendant entered into a further agreement, by which it was agreed that the defendant should and did waive plaintiff's failure to pay the $2,000 due on the 1st day of September, 1896, and by which it was agreed that the defendant would fulfill and perform all things in the contract on its part to be performed; and that, in consideration thereof, the plaintiff would accept and receive and purchase all hops pursuant to the terms of said contract, and would pay for the same the purchase price thereof mentioned in the said contract of April 9, 1896; and that, accordingly, on the 15th day of October, 1896, the defendant shipped to the plaintiff 200 bales of hops, pursuant to the contract of April 9th, and pursuant to the agreement between the defendant and the plaintiff, and drew its draft upon the plaintiff, through the London & San Francisco Bank, of Portland, Or., for the sum of $2,707, and attached to such draft a bill of lading for the said 200 bales of hops shipped to the plaintiff as aforesaid, which draft was paid upon presentation, by the plaintiff; and it is alleged that the plaintiff is ready and willing to pay for the remaining 380 bales of hops which the defendant by the said contract of April 9th agreed to sell and deliver to him, and to pay for the same at the rate 7½ cents per pound upon the delivery of the same free on board the cars at Portland; and he further alleges that on the 2d day of November, 1896, the plaintiff exercised the option reserved to him by his contract, and notified the defendant, in writing, that he desired the remaining 300 bales, which by said contract defendant agreed to sell and deliver in the months of November and December, 1896, to be delivered in November, 1896, but the defendant has wholly failed and neglected to sell and deliver to plaintiff the remaining

300 bales of hops. Then follows an allegation of the damages sustained by plaintiff by reason of the failure so alleged.

The defendant denies the alleged contract of October 15, 1896; and it alleges that prior to the execution of said contract, and ever since, the plaintiff was informed and well knew that defendant could perform said contract only by making subcontracts for said hops with the growers thereof in the state of Oregon, and that said growers could not fulfill said subcontracts with defendant unless the defendant advanced them a certain proportion of the purchase price of said hops to pick, cure, and bale the same; that the said sum of $2,000 provided by said contract to be paid to defendant by plaintiff on September 1, 1896, was necessary to enable defendant to advance said picking money to said growers; and that the prompt advancement of said sum by plaintiff was a condition precedent to the performance of any part of said contract by defendant; and it alleges, among other things, that about October 15, 1896, the defendant shipped to plaintiff the 200 bales of hops provided for in said contract, reserving at the same time to itself all rights that had accrued to it by reason of the breach of said contract by plaintiff, and defendant was paid therefor the contract price; that plaintiff then again refused, failed, and neglected, and ever since has refused, failed, and neglected, to advance to plaintiff the remaining $800 of the advancement of $2,000, and the defendant thereupon and thereby was rendered and became unable to carry out the remainder of said contract, and to make any of the remaining shipments of said hops.

The reply denies the allegation that defendant relied upon the advances provided for in the contract, to provide growers with money to enable them to pick and cure their hops, as alleged in the answer; and the reply further alleges that the defendant is estopped to say that it relied upon the payment of the $2,000 on September 1, 1896, or that, by reason of default in the payment of any sum under that contract, defendant was unable to fulfill the contract alleged in the complaint, or any part thereof, or that it has suffered damages on account of any breaches of the contract, made prior to the 15th of October, 1896, because after said 1st day of September defendant elected to hold plaintiff personally liable for the payment of the sum of $2,000, and elected to enforce the provisions of said contract as against plaintiff with respect to said sum, and to fulfill the provisions thereof on its part; and that the defendant is estopped and should not now be allowed to say that the plaintiff has made any default in anything on his part to be done under the contract of April 9, 1896; and that it should not be heard to say that it has sustained any damages by reason of any default, for that on the 15th day of October, 1896, and after the shipment by defendant of the 200 bales of hops and the payment therefor of $2,707 by plaintiff, as stated in the complaint, in consideration thereof, and upon the further consideration that the plaintiff would perform and carry out all the other provisions of the said contract of April 9, 1896, the defendant agreed that it would carry out and perform all things on its part to be observed and performed, in effect as though there had been no breach on plaintiff's part of the contract as it originally stood.

It is now claimed on the part of the plaintiff that the agreement on plaintiff's part to advance $2,000 on the 1st day of September,

1896, was not a condition precedent, upon the breach of which by the plaintiff the contract might be avoided by defendant, but was an independent covenant, for breach of which an action would lie in favor of the defendant, and against the plaintiff, and the error of the court relied upon is its refusal to so instruct the jury. The agreement of the plaintiff was to pay for the hops contracted to be delivered by the defendant, by advancing the sum of $2,000 on the 1st day of September, 1896. Of this amount, $1,200 was to be applied upon the first shipment of hops, and $800 was to constitute an advance payment on the second shipment to be made under the contract. It will be seen that the case made in the pleadings differs from that relied upon in the motion for a new trial, in this: On his motion, the plaintiff contends that the advance payment to be made on the 1st day of September was an independent covenant, and that the failure on his part to comply with it did not warrant the defendant in the refusal to deliver the hops contracted for; while the case made in the complaint is that there was on the 15th day of October a supplemental or further agreement between the parties, by which the contract as it theretofore existed was modified and changed, and the case was submitted to the jury upon the issue thus presented, and although there was no testimony directly tending to prove the existence of any such contract, yet the court left it open to the jury to find, as a matter of implication, from all the facts in evidence in the case, whether such an agreement was, in fact, entered into between the parties. I am of the opinion that the plaintiff has no cause of complaint in this regard. The only question of doubt there is in the matter, in my mind, is as to whether the court did not go too far in allowing the jury to find, as they might have done, in favor of the plaintiff as to the contract of October 15th, in the absence of any testimony directly tending to prove such contract.

This contract, like all others, must be judged by the rule of common fairness between the parties. It is apparent that the intention of this contract, and the consideration for it on the part of the defendant company, were the payments contracted to be made at the time provided for; that these advance payments were to enable the defendant on its part to make advances, in its turn, to those from whom it expected to procure the hops with which to comply with its contract with the plaintiff. At least, there was testimony tending to prove this fact. The effect of the contract was that, of these advances, $1,200 was to be applied upon the first shipment of hops, and $800 was to be applied upon the second shipment, making a further payment necessary upon the first delivery, in order to complete, with the $1,200 on deposit, the payment for the hops to be then delivered. The plaintiff cannot be heard now to say that there was a waiver, by conduct on the defendant's part, of his own failure to comply with his contract when he has alleged that there was a waiver by contract. He must prove his defense as alleged, instead of which, in its present posture, he abandons altogether the claim of the contract of waiver, and relies upon the conduct of the defendant in making its first shipment of hops, and in drawing upon him for the payment therefor, as tending to prove waiver by conduct. But, as to

STRAUS V. J. M. RUSSELL CO. <span>593</span>

this, the testimony of Mr. Whidden, one of the parties, is that he visited the plaintiff about the forepart of September, 1896, and had conversations with him in respect to his failure to advance the money as contracted for; and that he then stated to the plaintiff that the defendant would probably ship the hops he had already contracted for, notwithstanding his failure to pay the $2,000 as agreed; but that he gave plaintiff to understand that no further shipments would be made unless he (the plaintiff) complied with his contract, and this obligation on the plaintiff's part was a continuing one. If the defendant waived the advance as to the first shipment, it does not, in my opinion, follow that it was thereafter precluded from insisting upon an advance of $800 to meet the second shipment; and if, as the jury had a right to find, the plaintiff was notified, in effect, that the first shipment by the defendant, notwithstanding the failure of the plaintiff to comply with his contract to advance $2,000, was not intended to have the effect of a waiver by the defendant of such failure, but that there would be no further shipments unless plaintiff complied with his contract,—if, I say, these statements were made by Mr. Whidden to the plaintiff, the jury would be warranted in finding that there was no waiver. The fact of the shipment, under the circumstances, does not necessarily have the effect of a waiver, and it would not have that effect if prior to the shipment, or prior to the payment by the plaintiff of the amount due upon the hops so shipped, the plaintiff is informed by the defendant that its conduct in making the shipment is not to have the effect of a waiver; and such is the tendency of the testimony introduced on the part of the defendant.

It is contended on the part of the plaintiff that the rules of law applicable in the construction of this contract are:

"(1) Where a day is appointed for doing any act, and the day is to happen or may happen before the promise by the other party is to be performed, the latter may bring action before performance, which is not a condition precedent: aliter if the day fixed is to happen after the performance, for then the performance is deemed to be a condition precedent.

"(2) When a covenant or promise goes only to part of the consideration, and a breach of it may be paid for in damages, it is an independent covenant, not a condition."

These are the rules found in 2 Benj. Sales, § 855, and as to these rules a note in the same work says that they are so general, vague, and difficult of application that they are of little practical use, but, like most arbitrary rules on a question of interpretation, they often lead away from the intent of the parties, instead of aiding to discover it. And the note goes on to quote from Watchman v. Crook, 5 Gill & J. 239, as follows:

"The strong leaning of the courts in modern times has been to disincumber themselves from the fetters of technical rules, and to give such rational interpretation to the contract as will carry the intention of the parties into full and complete operation."

The authority quoted from (Benjamin on Sales) lays it down that, in the application of these rules—

"The circumstances under which the contract was made, and the purpose for which it was made, are to be taken into consideration. The same statement

may, under certain circumstances, be merely a description or representation, and, under others, the most substantial stipulation in the contract."

So, here, the agreement to make advance payments by the plaintiff was the most substantial stipulation in the contract, not to be lightly treated by the plaintiff for reasons of his own, in the expectation that he could still receive the benefits of the contract without complying with its substantial requirements upon his own part. It is also one of the rules that:

"Where each party is to do an act at the same time as the other, as where goods in a sale for cash are to be delivered by the vendor, and the price to be paid by the buyer, these are concurrent conditions, and neither party can maintain an action for breach of contract, without averring that he performed or offered to perform what he himself was bound to do."

Now if, under these circumstances, failure to pay the stipulated price is such a violation of the contract as relieves the other party from compliance, upon what principle of reason can it be held that the failure to pay the purchase price in advance does not have the same effect? Can it be said that the party whose necessities may have induced him to stipulate for an advance payment is less favored than one who stipulates for a payment upon delivery? It is manifest that the stipulation in this case is not an independent stipulation, but a dependent one; that it was a condition to be performed in advance, in order that the defendant might, by such advance payment, be put in a position to comply with the contract on his part. The conduct of the plaintiff in this case does not comport with fair dealing. In the language of Lord Esher, replying to an address of the attorney general on the occasion of his retiring from his office as master of the rolls:

"It is the duty of the judge to find out what is the rule which people of candor and honor and fairness in the position of the two parties would apply in respect to the matter in hand; * * * and the canon of law is that that rule should be adopted and applied to the case which people of honor and candor and fairness, in such a transaction, would apply each to the other."

Judged by such a standard, it ill becomes the plaintiff to say that it ought not to be urged against his right of recovery that he did not comply with his own stipulation as to these advance payments, but that the defendant, in respect to them, might have had recourse to the courts of law in an independent action. The testimony tends to show that he deliberately and premeditately violated his contract, and that his excuse for it was the unsettled condition of the politics of the country, and his fear that the country would go to a silver basis. Because of this fear, he insisted that the defendant should execute a bond in his favor to secure him in the advances which he had contracted to make, without any security whatever. Such conduct on his part does not comport with candor and fair dealing, and does not entitle him to the favorable consideration which the court is urged to take of his conduct, on this motion. The motion is denied.